**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------- X    **Docket No.:**
TEWODROS KIROS,

                                  Plaintiff,

                                                   **COMPLAINT**

            - against -

PHYSICIAN AFFILIATE GROUP OF NEW YORK,    **PLAINTIFF DEMANDS**
P.C., DEBORAH OTTENHEIMER, *In Her Individual*    **A TRIAL BY JURY**
*and Official Capacities*, JEREMY O'CONNOR, *In His*
*Individual and Official Capacities,* and SHAUN RAVENEL,
*In Her Individual and Official Capacities,*
                                  Defendants.
-------------------------------------------- X

    PLAINTIFF TEWODROS KIROS ("PLAINTIFF"), by and through his attorneys,

PHILLIPS & ASSOCIATES, hereby complains of DEFENDANT, upon information and belief,

as follows:

### NATURE OF THE CASE

1.    Plaintiff complains pursuant to (i) Family Medical Leave Act ("FMLA"); (ii) the New York

      State Human Rights Law, New York State Executive Law §§ 296, *et seq.* ("NYSHRL");

      and (iii) the New York City Human Rights Law, New York City Administrative Code §§

      8-107, *et seq.* ("NYCHRL"),   and seeks damages to redress the injuries PLAINTIFF has

      suffered as a result of being **discriminated and retaliated against (including hostile**

      **work environment)** by DEFENDANTS solely due to his **disabilities, whether actual**

      **and/or perceived**, and/or his engagement in protected activities, as well as **interfered with**

      **his rights under the FMLA**.

2.    DEFENDANT PAGNY's mission to provide accountable, responsive, and quality care

      with sensitivity to the diverse needs of New York's community, along with its

      commitment to delivering exceptional patient-centered healthcare, stands in stark contrast

      to its discriminatory practices against employees with disabilities, undermining its core

      values of inclusivity and equal opportunity in the workplace.

**JURISDICTION, VENUE, AND PROCEDURAL PEREQUISITES**

3.     Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101, *et seq*., and 28 U.S.C. §§ 1331 and 1343.

4.     The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State and City law pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred therein.


**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6.     On October 20, 2023, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation.

7.     On September 25, 2025, the EEOC issued PLAINTIFF a Notice of Right to Sue, which was received by PLAINTIFF on the same date.

8.      PLAINTIFF has exhausted all administrative remedies as required under applicable law before filing this Complaint.


**PARTIES**

9.     **PLAINTIFF TEWODROS KIROS ("PLAINTIFF")** is a male resident of the State of New York. PLAINTIFF was initially employed as an Optometrist to work at the Morrisania/Gotham Health location (hereinafter "Morrisania") of New York City Health and Hospitals Corporation (hereinafter "NYCHHC") by Downtown Bronx Medical Associates, P.C. in the Department of Ophthalmology. Thereafter, DEFENDANT

PHYSICIAN AFFILIATE GROUP OF NEW YORK took over the Affiliation Agreement with NYCHHC, and on or around November 2011, PLAINTIFF'S employment transitioned to work under DEFENDANT, where PLAINTIFF continued his role as an Optometrist at Morrisania.

10.    **DEFENDANT PHYSICIAN AFFILIATE GROUP OF NEW YORK (hereinafter "DEFENDANT PAGNY")** is a domestic corporation duly incorporated formed under the laws of the State New York State.

11.    Upon information and belief, DEFENDANT PAGNY, through an Affiliation Agreement with NYCHHC, provides medical staff and healthcare services for seven of the eleven public hospitals operated by NYCHHC.

12.    Upon information and belief, DEFENDANT PAGNY'S corporate headquarters is located at 420 Lexington Avenue, Suite 1750, New York, New York 10170.

13.    Upon information and belief, DEFENDANT PAGNY employs more than 50 employees and is an employer as defined under the Family Medical Leave Act.

14.    **DEFENDANT DEBORAH OTTENHEIMER ("DEFENDANT OTTENHEIMER")** is/was the Interim Associate Medical Director at DEFENDANT PAGNY and has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT OTTENHEIMER is being sued herein in her individual and official capacities.

15.    **DEFENDANT JEREMY O'CONNOR ("DEFENDANT O'CONNOR")** is/was the Regional Medical Director at DEFENDANT PAGNY and has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT O'CONNOR is being sued herein in his individual and official capacities.

16.   **DEFENDANT SHAUN RAVENEL ("DEFENDANT RAVENEL") is/was** DEFENDANT PAGNY'S Human Resources Business Partner and has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT RAVENEL is being sued herein in his individual and official capacities.

17.   **DEFENDANTS OTTENHEIMER O'CONNOR and RAVENEL** will collectively be known as **"INDIVIDUAL DEFENDANTS"**.

18.   **DEFENDANTS PAGNY, OTTENHEIMER, O'CONNOR and RAVENEL** will collectively be referred to as **"PAGNY DEFENDANTS"**.

## <u>MATERIAL FACTS</u>

19.   In **2006**, PLAINTIFF was initially employed as an **Attending Optometrist** to work at the Morrisania/Gotham Health Community Clinic located at **1225 Gerard Avenue, Bronx, New York 10452** (hereinafter "NYCH&H") by then affiliate **New York City Medical College** (hereinafter "NYMED") in the Department of Ophthalmology. Upon information and belief, NYMED had an **Affiliation Agreement** with NYCH&H. *(In 2007, affiliation and Attending providers first changed hands from NYMED to Downtown Bronx Medical Association (hereinafter "DBMA")).*

20.   In 2009, DEFEFNDANT PAGNY took over the Affiliation Agreement that DBMA had with NYCH&H. As such, PLAINTIFF'S employment transitioned to PAGNY, where the PLAINTIFF continued his role as an **Acting Chief of Service** (Chief of Service in 2011-2020) at the same Morrisania location.

21.   On or around July 3, 2018, PLAINTIFF was diagnosed with a skin condition, Dermatitis Herpetiformis, which, when exacerbated, interfered with PLAINTIFF's ability to work.

Dermatitis Herpetiformis is a rare autoimmune disease which symptoms include itchy, blistering, burning skin rash, blisters in the mouth and stomach pains. Dermatitis Herpetiformis can be a serious medical condition, and it is a skin condition that is evaluated under the Americans With Disabilities Act [1] . The severity of such skin condition is measured by the extent and the frequency of the outbreaks of skin lesions, how the symptoms limit functions and the extent and effectiveness of treatment.

22.    Thus, PLAINTIFF suffered from a physical and/or medical impairment that prevented the exercise of normal bodily function and/or is demonstrable by medically accepted clinical or laboratory diagnostic techniques which qualified as a serious health condition.

23.    PLAINTIFF was qualified for his position and performed his duties in a satisfactory manner until his disability began to result in skin flare-ups, as the condition caused patches of itchy and painful lesions on various parts of PLAINTIFF'S body that were visible to patients. When PLAINTIFF'S condition flared up, this required him to occasionally take sick days and call out of work.

24.    PLAINTIFF could perform the essential functions of the jobs at issue with reasonable accommodation.

25.    In March 2023, PLAINTIFF contacted DEFENDANT PAGNY'S Human Resources department and informed them he was experiencing more flare ups of his skin condition and felt that he was under a mental strain.

26.    DEFENDANT PAGNY'S Human Resources department advised that PLAINTIFF should go on FMLA leave in August 2023 but instructed PLAINTIFF that he was required to use up all of his sick days prior to taking FMLA.

27.    On or about July 12, 2023, PLAINTIFF met with DEFENDANT OTTENHEIMER, DEFENDANT PAGNY'S Interim Associate Medical Director, and DEFENDANT

O'CONNOR, DEFENDANT PAGNY'S Regional Medical Director, and informed

DEFENDANT O'CONNOR that he would need to apply for FMLA due to serious health

issues.

---

[1] www.ssa.gov/disability/professionals/bluebook/8.00-skin-adult.htm

28. During this meeting, DEFENDANT OTTENHEIMER presented PLAINTIFF with a document that she and DEFENDANT SHAUN RAVENEL – DEFENDANT PAGNY'S Human Resources Business Partner (hereinafter "DEFENDANT RAVENEL") – had drafted regarding PLAINTIFF'S attendance.

29. DEFENDANT OTTENHEIMER acknowledged that PLAINTIFF had health issues but stated that it was not the ***"why"*** of why he was out that was important, but rather they ***"can't run a clinic like this"***, and that termination was being considered.

30. Shortly thereafter, DEFENDANT O'CONNOR sent a terse email to PLAINTIFF complaining about his absences for his serious medical conditions.

31. The email read in pertinent part:

> **"On July 12, 2023, we met in person, at your request, for an urgent discussion. In that meeting you advised me of some health issues you were experiencing as well as childcare challenges. We discussed the possibility of application for FMLA in order to accommodate your personal needs. Since that meeting you have been absent twice and late once. In addition, every member of the support staff in your division have come to me this week with complaints of inappropriate displays of anger, refusals to see patients, and unexplained lateness to return from lunch.**
>
> **Your chronic absenteeism and lateness have affected patient care such that many have declined to ever return to our facility, for any reason, because of the frequent and repeated cancellation of their appointments. As a result, our facility has lost not only revenue that might have been generated by a visit with you, but also revenue associated with any other visits those patients may have had with primary care, gyn, dental, radiology, pediatrics and/or podiatry services."**

32. PAGNY DEFENDANTS were more concerned with financial gain than the well-being of

their employee, namely PLAINTIFF.

33. Thereafter, on or around July 17, 2023, PLAINTIFF sent an email to DEFENDANT OTTENHEIMER to request that his work days be cut down to four times a week from Monday to Thursday, starting in September, so that he could look after his health. PLAINTIFF also advised DEFENDANT OTTENHEIMER that he would be out for two weeks in August.

34. DEFENDANT OTTENHEIMER advised PLAINTIFF that he would need to apply for intermittent FMLA if PLAINTIFF wanted his request to be temporary, or alternatively, other paperwork if the request was for a permanent change. PLAINTIFF informed DEFENDANT OTTENHEIMER that he was not planning on his request to be a permanent change.

35. Despite PLAINTIFF'S numerous discussions with Human Resources, DEFENDANT OTTENHEIMER, and DEFENDANT O'CONNOR regarding PLAINTIFF'S disabilities and his need to take care of his health, DEFENDANT OTTENHEIMER stated, ***"We spoke about the need for you to be here Mondays when Dr. Desai is out, and I'd appreciate it if you would honor that."***

36. In July 2023, PLAINTIFF sent another email to DEFENDANT OTTENHEIMER with a copy of a note from his treating doctor. PLNAINTIFF also advised DEFEDANT OTTENHEIMER of his upcoming request in August for a sick leave followed by FMLA due to severe full-body skin eruptions that made it so that he could not interact with patients, and also due to a medication regimen change and dose reduction, which made PLAINTIFF jittery and caused hand tremors.

37. As such, PLAINTIFF was told by DEFENDANT RAVENEL that his situation may qualify for FMLA. Additionally, DEFENDANT RAVENEL provided PLAINTIFF FMLA forms

as well as DEFENDANT PAGNY'S <u>FMLA</u> and Sick leave policies, which PLAINTIFF confirmed receipt of.

38.    On August 2, 2023, DEFENDANT RAVENEL sent an e-mail to PLAINTIFF advising that DEFENDANT PAGNY'S Sick leave policy stated that employees who took sick absences of 7 or more consecutive workdays were required to apply for <u>FMLA</u>.

39.    Thereafter PLAINTIFF'S sick leave for the period of August 6th, 2023, through August 20th, 2023was approved, with return-to-work date from FMLA not determined as of August 20th.

40.    However, PLAINTIFF was under the impression, based on the numerous discussions that he had with DEFENDANTS O'CONNOR, OTTENHEIMER, and RAVENEL about his health and FMLA, that once PLAINTIFF'S sick leave period came to an end, it would switch over to FMLA leave so that he could continue to take care of his health, as that was the plan that was initially discussed.

41.    During the two-week sick-leave PLAINTIFF was in the process of working out return-to-work date with the help of PAGNY HR/Benefits Department and my treating physicians while still suffering from his serious health condition.

42.    On Monday morning August 21st, 2023, DEFENDANT OTTENHEIMER sounding very upset, contacted PLAINTIFF on his mobile phone at his home demanded to know why PLAINTIFF is not back from his two-week vacation and "…what are you going to do with these patients…"   PLAINTIFF, confused about DEFENDANT OTTENHEIMER'S claims, then reached out to DEFENDANT RAVENEL to speak to her about the conversation. PLAINTIFF also informed her that he still was unable to see patients in the state he was in and requested that DEFENDANT RAVENEL inform DEFENDANT OTTENHEIMER that he had been on an approved sick-leave the first two weeks and

FMLA return-to-work date is yet to be determined as it was in the process.

43. At that time, PLAINTIFF was bedridden and engulfed with blisters and believed that his FMLA and leave application were being processed, and that he was on protected leave. However, when PLAINTIFF spoke to DEFENDANT RAVENEL, she neither confirmed, denied, nor advised PLAINTIFF of his FMLA status.

44. Thereafter, on or about August 23, 2023, PLAINTIFF received a short-term disability application for him to fill out.

45. On the very next day, while PLAINTIFF was still out on medical leave and actively trying to extend his leave, DEFENDANT OTTENHEIMER scheduled a virtual meeting with PLAINTIFF, DEFENDANT O'CONNOR, and PLAINTIFF'S Union representative, Devon Gilliams (hereinafter "Ms. Gilliams").

46. Ms. Gilliams immediately informed PAGNY DEFENDANTS that PLAINTIFF was communicating with PAGNY HR to extend his medical leave, and asked, *"Can you please reach out to HR directly to confirm this? This meeting should not be scheduled until Dr Kiros returns from FMLA."*

47. Despite being told this information, PAGNY DEFENDANTS held the meeting anyway, without PLAINTIFF being present.

48. Ms. Gilliams again protested by stating, *"I sent an email to Dr. Ottenheimer at 1:00 PM that everyone was cc'd on clearly stating, 'This meeting should not be scheduled until Dr. Kiros returns from FMLA.' I am unsure why the meeting was held anyway. I believe it would make sense to hold the meeting upon Dr. Kiro's return from medical leave."*

49. However, he was told by DEFENDANT RAVENEL that *"Dr. Kiros has not been approved from FMLA and we need to proceed with this meeting."*

50. PAGNY DEFENDANTS did not take PLAINTIFF'S disability seriously.

Then, on August 25th 2023, DEFENDANT OTTENHEIMER abruptly sent a termination email letter to PLAINTIFF (bypassing both the customary involvement both PAGNY and Doctors Council Physicians' Union) for "…failed to return to work…approved vacation."

51.   PLAINTIFF was wrongfully terminated within weeks of advising PAGNY DEFENDANTS of his need for <u>FMLA</u> leave, and within days of receiving an application for short-term disability so that he may request for his leave to be extended and continued need for reasonable accommodations.

52.   Once PAGNY DEFENDANTS were made aware that PLAINTIFF intended to take medical and/or <u>FMLA</u> leave, and that PLAINTIFF would be out on medical leave for an extended time, PAGNY DEFENDANTS began to plot PLAINTIFF'S termination.

53.   PLAINTIFF was wrongfully discharged from his employment at/with DEFENDANT PAGNY.

54.   PAGNY DEFENDANTS never engaged in any interactive process with PLAINTIFF.

55.   PAGNY DEFENDANTS had no good faith business justification for the actions taken against PLAINTIFF herein.

56.   PLAINTIFF'S multiple accommodation requests, including need for leave under the Family Medical Leave Act, resulted in an adverse action, and he was ultimately discharged due to his disabilities and/or for seeking reasonable accommodations.

57.   At no time did PAGNY DEFENDANTS intend to offer PLAINTIFF accommodations as is required under Federal, State, and/or City laws.

58.   But for PLAINTIFF'S disability and request for accommodations, PLAINTIFF would not have been wrongfully discharged.

59.   PLAINTIFF was also entitled to leave and/or protections under the <u>FMLA</u> but was not afforded same.

60.    PAGNY DEFENDANTS were aware that PLAINTIFF was suffering from a serious medical condition that resulted in PLAINTIFF'S absences, to the extent that they recommended that PLAINTIFF take leave pursuant to the <u>FMLA</u>.

61.    Yet PAGNY DEFENDANTS terminated PLAINTIFF while he was out on medical leave and was seeking to extend his medical leave due to his serious medical condition.

62.    PAGNY DEFENDANTS treated PLAINTIFF less well as a result of his disability.

63.    PLAINTIFF engaged in protected activity by notifying his employers of his intention to apply for leave pursuant to the <u>FMLA</u>.

64.    PAGNY DEFENDANTS' wrongful termination of PLAINTIFF was motivated by PAGNY DEFENDANTS' intent to discriminate against PLAINTIFF and interfere with PLAINTIFF'S rights under the <u>FMLA</u>.

65.    PAGNY DEFENDANTS wrongfully terminated PLAINTIFF and refused to make any accommodations for PLAINTIFF'S disability.

66.    INDIVIDUAL DEFENDANTS actively participated in the discriminatory conduct towards PLAINTIFF.

67.    INDIVIDUAL DEFENDANTS supported, condoned, ratified, and approved of the discriminatory conduct of DEFENDANT PAGNY against PLAINTIFF.

68.    INDIVIDUAL DEFENDANTS were each acting pursuant to their employments as agents, employees and representatives of their Principal, DEFENDANT PAGNY.

69.    PAGNY DEFENDANTS' conduct towards PLAINTIFF would reasonably deter a similarly situated employee from engaging in protected activities.

70.    PAGNY DEFENDANTS' actions were malicious, intentional, and intended to harm PLAINTIFF.

71.    PAGNY DEFENDANTS' conduct was a **<u>continuing violation of</u>** PLAINTIFF'S rights.

72.    As a result of PAGNY DEFENDANTS' actions, PLAINTIFF was humiliated, degraded, victimized, embarrassed, and emotionally distressed.

73.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

74.    PAGNY DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

75.    As such, PLAINTIFF demands punitive damages as against all PAGNY DEFENDANTS, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR *INTERFERENCE / DISCRIMINATION* UNDER THE FAMILY AND MEDICAL LEAVE ACT
*(Against Defendant PAGNY)*

76.    PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

77.    Section 2612(d)(2)(B) of the FMLA, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

78.    Additionally, Section 2615(a) of the FMLA, states in pertinent part:

> Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual

for opposing any practice made unlawful by this subchapter.

79.    DEFENDANT PAGNY violated these sections as set forth herein.

80.    PLAINTIFF clearly communicated to PAGNY DEFENDANTS his need for accommodations and made PAGNY DEFENDANTS aware of his circumstances, which qualified for <u>FMLA</u> protections.

81.    PLAINTIFF specifically advised PAGNY DEFENDANTS of his need for <u>FMLA</u> leave, days off, and/or other accommodations that would have allowed him to perform the duties of his employment.

82.    PLAINTIFF could have been accommodated through <u>FMLA</u> leave.

83.    PAGNY DEFENDANTS, after having been provided with reasonable notice, knew or should have known that PLAINTIFF should have been afforded and advised of his rights under the <u>FMLA</u>.

84.    Once PLAINTIFF advised PAGNY DEFENDANTS of his need for <u>FMLA</u> leave, PAGNY DEFENDANTS immediately sought to interfere with, or retaliate against, PLAINTIFF'S <u>FMLA</u> rights.

85.    PAGNY DEFENDANTS interfered with PLAINTIFF'S rights under the <u>FMLA</u>.

86.    PAGNY DEFENDANTS failed/refused to advise PLAINTIFF about his rights and responsibilities under the law.

87.    Upon information and belief, DEFENDANT PAGNY could have allowed PLAINTIFF to properly exercise <u>FMLA</u> leave.

88.    Instead, PAGNY DEFENDANTS wrongfully terminated PLAINTIFF in retaliation and/or in furtherance of their discriminatory purposes as per the FMLA while PLAINTIFF was on medical leave and in discussions to extend his leave.

89.    PAGNY DEFENDANTS were not concerned with the well-being of their employee, PLAINTIFF. Instead, PAGNY DEFENDANTS were aiming to eliminate PLAINTIFF by

any means.

90.     PAGNY DEFENDANTS had no good faith business justification for any of the actions

        taken against PLAINTIFF as alleged herein.

91.     As a result of PAGNY DEFENDANTS' actions, PLAINTIFF was extremely humiliated,

        degraded, victimized, embarrassed, and emotionally distressed.

92.     As a result of the acts and conduct complained of herein, PLAINTIFF suffered, and

        continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,

        adverse employment action, loss of income, loss of past/future wages, the loss of a salary,

        special damages, loss of employment, loss of benefits, and loss of other compensation

        which such employment entails. PLAINTIFF has also suffered future pecuniary losses,

        emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-

        pecuniary losses.

93.     PAGNY DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted

        with full knowledge of the law.

94.     As such, PLAINTIFF is entitled to the maximum amount allowed under this law.


**AS A SECOND CAUSE OF ACTION FOR *DISCRIMINATION*
UNDER NEW YORK STATE EXECUTIVE LAW**
*(Against all Defendants)*

95.     PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said

        paragraphs were more fully set forth herein at length.

96.     The New York State Executive Law § 296(1)(a) provides in pertinent part: "It shall be an

        unlawful discriminatory practice: For an employer . . . because of an individual's . . . disability

. . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

97.    PAGNY DEFENDANTS violated this section as set forth herein.

98.    At all times, PLAINTIFF suffered from a physical and/or medical impairment that prevented the exercise of normal bodily function and/or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, which qualified as a serious health condition.

99.    As a result of PLAINTIFF'S disability, PLAINTIFF requested reasonable accommodations; specifically, PLAINTIFF requested medical leave pursuant to the FMLA.

100.   PLAINTIFF was terminated while on medical leave.

101.   But for PLAINTIFF'S disabilities and requests for reasonable accommodations, PAGNY DEFENDANTS would not have terminated PLAINTIFF'S employment.

102.   PLAINTIFF advised PAGNY DEFENDANTS that he had disabilities and requested reasonable accommodations on multiple occasions, including while he remained on medical leave.

103.   PAGNY DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

104.   Most certainly, INDIVIDUAL DEFENDANTS were aware of PAGNY DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

105.   INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the laws.

106.   INDIVIDUAL DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

107.   DEFENDANT PAGNY had no good-faith business justification to terminate PLAINTIFF.

108.    But for PLAINTIFF'S multiple requests for reasonable accommodations, COLLECTIVE DEFENDANTS would not have terminated PLAINTIFF.

109.    COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities, request for <u>FMLA</u> leave, and/or requests for reasonable accommodations.

110.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

111.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## AS FOR A THIRD CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW
### *(Against all Defendants)*

112.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

113.    <u>New York State Executive Law</u> § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

114.    PAGNY DEFENDANTS violated this section as set forth herein.

115.    PAGNY DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disabilities and for engaging in protected activity by

requesting a reasonable accommodation.

116.    Most certainly, INDIVIDUAL DEFENDANTS were aware of PAGNY DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

117.    INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

118.    INDIVIDUAL DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

119.    PAGNY DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

120.    PAGNY DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

121.    But for PLAINTIFF'S disabilities, PAGNY DEFENDANTS would not have terminated him.

122.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

123.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW**
***(Aider and Abettor Liability against INDIVIDUAL DEFENDANTS)***

124. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

125. New York State Executive Law § 296(6) provides that it shall be anunlawful discriminatory practice: "For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

126. INDIVIDUAL DEFENDANTS violated the section cited herein as set forth and was personally involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

127. INDIVIDUAL DEFENDANTS utilized their power, authority, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

128. But for INDIVIDUAL DEFENDANTS' positions with/at DEFENDANT PAGNY, INDIVIDUAL DEFENDANTS would not have been able or authorized to take and continue their discriminatory and retaliatory campaign against PLAINTIFF.

129. At all times relevant to the Complaint, while employed at DEFENDANT PAGNY, PLAINTIFF was continuously subjected to discriminatory comments/intimidation, differential treatment, wrongful termination, and other discriminatory/retaliatory actions as alleged above.

130. INDIVIDUAL DEFENDANTS, acting pursuant to their authority, ignored DEFENDANT PAGNY'S own policies, procedures, and rules regarding discriminatory behavior in the workplace generally.

131. INDIVIDUAL DEFENDANTS actively participated in the discriminatory conduct towards PLAINTIFF.

132. INDIVIDUAL DEFENDANTS supported, condoned, ratified, and approved of the discriminatory conduct of DEFENDANT PAGNY against PLAINTIFF.

133.    INDIVIDUAL DEFENDANTS were each acting pursuant to their employments as agents, employees and representatives of their Principal, DEFENDANT PAGNY.

134.    INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of his employer, DEFENDANT PAGNY.

135.    INDIVIDUAL DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

136.    As a result of PAGNY DEFENDANTS' discriminatory treatment of PLAINTIFF, he has suffered severe emotional distress.

137.    PAGNY DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

138.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

139.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.


### AS A FIFTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Against all Defendants)*

140.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

141.    The New York City Administrative Code § 8-107(1) provides that:
    It shall be an unlawful discriminatory practice: (a) For an employer

or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

142. PAGNY DEFENDANTS violated the section cited herein.

143. But for PLAINTIFF'S disabilities and request for reasonable accommodations, PAGNY DEFENDANTS would not have terminated PLAINTIFF'S employment.

144. PAGNY DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

145. PLAINTIFF advised PAGNY DEFENDANTS that he had a disability and requested reasonable accommodations, including medical leave pursuant to the FMLA.

146. PAGNY DEFENDANTS refused to accommodate PLAINTIFF, declined to engage in the interactive process, and instead terminated PLAINTIFF while PLAINTIFF was out on medical leave.

147. INDIVIDUAL DEFENDANTS were aware of DEFENDANT PAGNY'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

148. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

149. INDIVIDUAL DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

150. DEFENDANT PAGNY is vicariously liable for the actions alleged herein, as all INDIVIDUAL DEFENDANTS were acting within the scope of their authorities as officers, agents, managers, supervisors, or representatives of his Principal, DEFENDANT PAGNY.

151.    COLLECTIVE DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

152.    PAGNY DEFENDANTS treated PLAINTIFF less well than his coworkers because of his disability.

153.    PAGNY DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

154.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

155.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.


### AS A SIXTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Against all Defendants)*

156.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

157.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

158.    PAGNY DEFENDANTS violated the section cited herein.

159.    PAGNY DEFENDANTS engaged in an unlawful discriminatory practice by retaliating

against PLAINTIFF because of his disabilities, and for engaging in protected activity by requesting a reasonable accommodation.

160. Most certainly, INDIVIDUAL DEFENDANTS were aware of DEFENDANT PAGNY'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

161. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

162. INDIVIDUAL DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

163. PAGNY DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

164. PAGNY DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

165. But for PLAINTIFF'S disabilities, PAGNY DEFENDANTS would not have terminated him.

166. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

167. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION*
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
*(Aider and Abettor Liability against INDIVIDUAL DEFENDANTS)*

168.   PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

169.   The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

170.   IDNIVIDUAL DEFENDANTS violated the section cited herein as set forth and was personally involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

171.   INDIVIDUAL DEFENDANTS utilized their power, authority, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

172.   But for INDIVIDUAL DEFENDANTS' position with/at DEFENDANT PAGNY, INDIVIDUAL DEFENDANTS would not have been able or authorized to take and continue their discriminatory and retaliatory campaign against PLAINTIFF.

173.   At all times relevant to the Complaint, while employed at DEFENDANT PAGNY, PLAINTIFF was continuously subjected to discriminatory comments/intimidation, differential treatment, wrongful termination, and other discriminatory/retaliatory actions as alleged above.

174.   INDIVIDUAL DEFENDANTS, acting pursuant to their authority, ignored DEFENDANT PAGNY'S own policies, procedures, and rules regarding discriminatory behavior in the workplace generally.

175.   INDIVIDUAL DEFENDANTS actively participated in the discriminatory conduct towards PLAINTIFF.

176. INDIVIDUAL DEFENDANTS supported, condoned, ratified, and approved of the discriminatory conduct of DEFENDANT PAGNY against PLAINTIFF.

177. INDIVIDUAL DEFENDANTS were each acting pursuant to their employments as agents, employees, and representatives of their Principal, DEFENDANT PAGNY.

178. INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of his employer, DEFENDANT PAGNY.

179. INDIVIDUAL DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

180. As a result of PAGNY DEFENDANTS' discriminatory treatment of PLAINTIFF, he has suffered severe emotional distress.

181. DEFENDANT PAGNY is vicariously liable for the actions alleged herein as INDIVIDUAL DEFENDANTS were acting within the scope of their authorities as officers, agents, managers, supervisors, or representatives of DEFENDANT PAGNY.

182. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

183. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## **JURY DEMAND**

184.    PLAINTIFF requests a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against the DEFENDANTS:

A.    Declaring that DEFENDANTS engaged in unlawful employment practices prohibited by the FMLA, NYSHRL, and NYCHRL in that DEFENDANTS interfered with PLAINTIFF'S protected right to safe leave, discriminated against PLAINTIFF on the basis of his disability and retaliated against PLAINTIFF;

B.    Awarding damages to PLAINTIFF for all lost wages and benefits resulting from DEFENDANTS' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding PLAINTIFF compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to his reputation in an amount to be proven;

D.    Reinstating PLAINTIFF to his position as authorized by the statutes herein;

E.    Awarding PLAINTIFF punitive damages;

F.    Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.    Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just, and proper to remedy the DEFENDANTS' unlawful employment practices.

Dated: New York, New York

TK

Tewodros Kiros, OD
245 E. 124th Street, Apt 10T
New York, NY 10035
(917) 756 5994
Eyesteddy@gmail.com

Signed by:

DFB4039A7428488...

12/22/2025